1

2

3    **UNITED STATES DISTRICT COURT**

4    **NORTHERN DISTRICT OF CALIFORNIA**

5    **SAN JOSE DIVISION**

6

7    IMANI BEY SUTTON, et al.,                    Case No.  5:23-cv-02057-BLF

8                    Plaintiffs,

9            v.                                   **ORDER GRANTING IN PART AND
                                                  DENYING IN PART PARKS' MOTION
10   DEPARTMENT OF PARKS AND                      TO DISMISS, AND DENYING
     RECREATION, et al.,                          FRIENDS' MOTION TO DISMISS**
11
                    Defendants.                   [Re:  ECF Nos. 46, 47]
12

13

14          Before the Court are two motions to dismiss Plaintiffs' Second Amended Complaint

15   ("SAC").  Defendants California Department of Parks and Recreation, Andrew Dobbs, Peter

16   Estes, Trevor Morgan, Scott Sipes, Phil Bergman, and David Williams (collectively, "Parks")

17   move to dismiss all claims against them.  ECF No. 46 ("Parks Mot.").  Defendants Friends of

18   Santa Cruz State Parks and Donna Walizer (collectively, "Friends") move to dismiss the Sixth

19   Cause of Action in Plaintiffs' Second Amended Complaint.  ECF No. 47 ("Friends Mot.").

20   Plaintiffs oppose both motions.  ECF Nos. 48 ("Parks Opp."), 49 ("Friends Opp.").  Parks filed a

21   Reply in support of its motion, ECF No. 51 ("Parks Reply"), and Friends likewise filed a Reply in

22   support of its motion, ECF No. 52 ("Friends Reply").  The Court held a hearing on the motions on

23   December 5, 2024.  *See* ECF No. 71.

24          For the following reasons, the Court hereby GRANTS IN PART AND DENIES IN PART

25   the motion to dismiss filed by Parks and DENIES the motion to dismiss filed by Friends.

26   **I.    BACKGROUND**

27       **A.  Factual Background**

28          Plaintiff Imani Bey Sutton ("Bey"), Minor Plaintiff L.B. ("L.B."), and Plaintiff Catherine

*(left margin, rotated)* United States District Court
Northern District of California

United States District Court
Northern District of California

Cosby ("Cosby") are all Black female residents of the County of Santa Cruz.  ECF No. 42 ("SAC") ¶¶ 2–4, 19.  They allege the following facts in their Second Amended Complaint, which are taken as true on a motion to dismiss.

On or about March 27, 2021, Plaintiffs visited Seacliff State Beach, which is located at the intersection of State Park Drive and Searidge Road in Aptos, California.  SAC ¶ 19.  At the time, L.B. was five years old, Bey was 30 years old, and Cosby was 27 years old.  *Id.*  Plaintiffs brought take-out food with them to the beach.  *Id.* ¶ 20.  When they finished eating, Bey went to place their garbage in a waste receptacle.  *Id.*  Because the receptacle was overflowing with waste, Bey "placed the garbage on top of or next to the trash" container before getting into her vehicle.  *Id.*

Shortly thereafter, an unknown white, blonde female accosted Plaintiffs regarding the trash from their take-out food.  *Id.* ¶ 21.  The woman "pick[ed] up [Plaintiffs'] recently discarded trash and thr[ew] it" at them and onto Bey's vehicle.  *Id.*  She also yelled at Plaintiffs, including telling them to "go back to the valley," *id.*, and threatened to call law enforcement on them, *id.* ¶ 22.  The unknown woman attempted to get others in the vicinity to join her in calling law enforcement.  *Id.* "At least one onlooker refused, citing the unknown woman's poor conduct."  *Id.* ¶ 23.

Eventually, the unknown white woman departed in her vehicle, and Plaintiffs decided to report the incident to park staff before leaving themselves.  *Id.* ¶¶ 24–25.  Plaintiffs approached a kiosk at the park, which was staffed by Defendant Donna Anne Walizer ("Walizer").  *Id.* ¶ 26. Bey and Cosby tried to explain to Walizer that they had been accosted by the unknown woman, but Walizer declined their efforts to make a report and instead "called them in to dispatch as a '415' (disturbing the peace)."  *Id.* ¶ 27.  Walizer told Bey that she was speaking to the park rangers, causing Bey to explain to Walizer her concern that, "as a Black person having the police called on her by white people," she and the other Plaintiffs might be at risk of being shot by the park rangers, if the rangers arrived armed with guns.  *Id.* ¶¶ 28–29.

While on the phone with dispatch, Walizer made various statements relevant to the claims at issue.  At one point, Walizer conveyed to dispatch that Bey had said that if "a ranger shows up that they're gonna be shot with guns."  *Id.* ¶ 31.  Later in the report to dispatch, Walizer said that Bey "said if the ranger came back with a gun, that they would be shot."  *Id.*  In addition, Walizer

1    "referenced George Floyd and laughed" while on the phone with dispatch, *id.* ¶ 32, and said that

2    "[f]emale is worried, she said she was Black, the rangers would shoot her," *id.* ¶ 36.  Walizer

3    confirmed to dispatch that she did not see any weapons in Plaintiffs' possession, *id.* ¶ 35, and that

4    Bey, L.B., and Cosby were all Black, *id.* ¶ 37.

5         Ultimately, park rangers were dispatched "for a 415 [disturbing the peace] with a park

6    employee," *id.* ¶ 34, and "arrived on scene Code-Three or Code-Four with their guns drawn and

7    pointed" at Plaintiffs, *id.* ¶ 42.  The rangers ordered Plaintiffs out of their vehicle and detained

8    them for approximately 20 minutes, although they did not search the vehicle and did not seek to

9    identify Cosby.  *Id.* ¶¶ 42–44.  Plaintiffs "asked numerous times to be allowed to leave" but were

10   not permitted to do so until approximately 25 minutes after Walizer spoke to dispatch.  *Id.* ¶¶ 43–

11   44.

12   **B.  Procedural Background**

13        Plaintiffs filed suit in the Superior Court of California for the County of Santa Cruz on

14   March 23, 2023.  ECF No. 2-2, Ex. A to Not. of Removal.  Based on federal question jurisdiction,

15   the Parks Defendants removed the suit on April 27, 2023.  ECF No. 2 ¶ 3.  Plaintiffs then amended

16   their Complaint on June 12, 2023.  ECF No. 9 ("FAC").  The Parks Defendants filed a motion to

17   dismiss the First Amended Complaint on October 6, 2023, ECF No. 24, and the Friends

18   Defendants filed a motion to dismiss on the same day, ECF No. 25.  On February 28, 2024, the

19   Court granted in part and denied in part both motions to dismiss.  ECF No. 38.

20        Plaintiffs filed their Second Amended Complaint ("SAC") on April 26, 2024, asserting

21   seven causes of action: (1) *Monell* liability against the California Department of Parks and

22   Recreation ("Department"), Friends of Santa Cruz State Parks ("Friends"), and Doe defendants,

23   SAC ¶¶ 57–68; (2) a claim of deliberately indifferent hiring, retention, training, supervision, and

24   discipline against the Department and Friends, SAC ¶¶ 69–80; (3) a claim of negligent hiring,

25   retention, training, and supervision by all Plaintiffs against Friends and Doe defendants, and in

26   addition against the Department by L.B., SAC ¶¶ 81–89; (4) a claim of negligence by all Plaintiffs

27   against Walizer, Friends, and Doe defendants, SAC ¶¶ 90–98; (5) a claim of professional

28   negligence by all Plaintiffs against Friends, Walizer, and Doe defendants, SAC ¶¶ 99–106; (6) a

1    claim of a Bane Act violation by L.B. against all defendants, and in addition by Bey and Cosby

2    against Friends, Walizer, and Doe defendants, SAC ¶¶ 107–112; and (7) a claim of an Unruh Civil

3    Rights Act violation by L.B. against all defendants, and in addition by Bey and Cosby against

4    Friends, Walizer, and Doe defendants, SAC ¶¶ 113–119.

5         Now before the Court are two new motions to dismiss: the Parks Defendants' motion to

6    dismiss all claims against them, ECF No. 46, and the Friends Defendants' motion to dismiss the

7    sixth cause of action in the Second Amended Complaint, ECF No. 47.

8    **II.    LEGAL STANDARD**

9         Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails

10   to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, the plaintiff

11   must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

12   *Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts

13   that allow the court to "draw the reasonable inference that the defendant is liable for the

14   misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must

15   be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  While courts

16   generally do not require "heightened fact pleading of specifics," a plaintiff must allege facts

17   sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555,

18   570.  However, "[i]n alleging fraud or mistake, a party must state with particularity the

19   circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

20        When determining whether a claim has been stated, the Court accepts as true all well-pled

21   factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP*

22   *Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as

23   true allegations that contradict matters properly subject to judicial notice" or "allegations that are

24   merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*

25   *Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations

26   omitted).  On a motion to dismiss, the Court's review is limited to the face of the complaint and

27   matters judicially noticeable.  *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.

28   1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

United States District Court
Northern District of California

4

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1051–52. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* at 1052. However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

## III. DISCUSSION

Counts IV and V of the Second Amended Complaint are asserted only against Defendants Friends, Walizer, and Does, none of which have moved to dismiss those two claims. Counts IV and V may proceed, and the Court will address each of the remaining causes of action in turn.

### A. Counts I and II: *Monell* Liability

As Parks notes in its briefing, Plaintiffs' Second Cause of Action for "Deliberately Indifferent Hiring, Retention, Training, Supervision, and Discipline" is largely the same as Plaintiffs' First Cause of Action. Parks Mot. at 7–8. Both counts attempt to state *Monell* claims and are challenged only by Parks, so the Court will address Counts I and II concurrently.

"The Supreme Court in *Monell* held that municipalities may only be held liable under section 1983 for constitutional violations resulting from official [municipal] policy or custom." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). "In particular, municipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).

Parks argues that Plaintiffs have failed to establish a viable *Monell* claim because they have done no more than "attach the Operating Agreement between Parks and Friends" without pointing out any content therein that demonstrates a "custom and practice" of permitting

1    inadequate staffing and/or training.  Parks Mot. at 6–7.  Plaintiffs respond that, in their view, the

2    Operating Agreement "amounts to an official policy" that is "evidence of and results in, a failure

3    to train, supervise or discipline employees at" state parks.  Parks Opp. at 4.  Plaintiffs also say that

4    the Operating Agreement evinces a "'longstanding and pervasive' custom and practice" of

5    "delegat[ing] management" of state parks.  *Id.* at 6.

6    　　　Plaintiffs' *Monell* claim appears to be variously characterized under all four theories of

7    *Monell* liability, *see Horton*, 915 F.3d at 602–03, although the predominant theory appears to be

8    "failure to train."  First, Plaintiffs invoke the "official policy" theory.  Under that theory, Plaintiffs

9    allege that the Operating Agreement between Parks and Friends "offloaded the management . . . of

10   state parks and beaches" thereby "abdicat[ing] liability . . . for . . . consequences of the

11   Agreement."  SAC ¶¶ 60, 71.  However, delegating management of state parks and beaches is not

12   a constitutional injury (and Plaintiffs do not point to any particular provision of the Operating

13   Agreement establishing a policy of imposing constitutional injury), so Plaintiffs' first theory does

14   not hold water.

15   　　　Second, Plaintiffs invoke the "custom and practice" theory, saying that Parks "maintained

16   a custom and practice of neither offering nor requiring training" to Friends volunteers "regarding

17   racial bias."  SAC ¶¶ 62, 73.  But here, again, a custom and practice of not offering or requiring a

18   certain type of training is not, in itself, a constitutional injury.

19   　　　Third, Plaintiffs invoke the "failure to train" theory, alleging that Parks was "deliberately

20   indifferent" to Friends volunteers' "lack of training related to working with law enforcement,

21   racial bias, and racial bias in reporting to law enforcement."  SAC ¶¶ 63, 74.  The Supreme Court

22   has warned that "[a] municipality's culpability for a deprivation of rights is at its most tenuous

23   where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing

24   *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985)).  To state such a theory of *Monell*

25   liability, a plaintiff must show that (1) she was "deprived of a constitutional right;" (2) the

26   defendant "had a training policy that amounts to deliberate indifference to the constitutional rights

27   of the persons with whom [its officers] are likely to come into contact;" and (3) her constitutional

28   injury "would have been avoided had the [defendant] properly trained those officers."

*Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (internal quotations omitted). On this theory, Plaintiffs' error is that "[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor *disregarded a known or obvious consequence* of his action." *Connick*, 563 U.S. at 61 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)) (emphasis added) (internal quotations omitted).  This is because "[a] less stringent standard of fault . . . 'would result in *de facto respondeat superior* liability on municipalities,'" which is not how section 1983 is intended to operate.  *See id.*  Plaintiffs have failed to allege any facts suggesting that Parks had "actual or constructive notice," *id.*, that a failure to train Friends volunteers about racial bias would cause them to violate citizens' constitutional rights.  "[E]vidence of the failure to train a single officer"—i.e., Walizer—"is insufficient."  *Blankenhorn*, 485 F.3d at 484.  Therefore, Plaintiffs have not alleged facts in their Second Amended Complaint sufficient to support a "failure to train" theory of *Monell* liability.

Finally, Plaintiffs invoke the "decision or act by a final policymaker" theory by saying that Parks' "policymakers . . . allowed law enforcement and park staff to continue their custom and practice of deliberate indifference unchecked."  SAC ¶¶ 67, 79.  In other words, the invocation of the "decision or act by a final policymaker" theory is effectively coextensive with the "failure to train" theory, because the decision or act purportedly alleged is that of "deliberate indifference" to the need for training.  But since Plaintiffs have not alleged facts sufficient to suggest "actual or constructive notice" of the need for training, Plaintiffs have failed to establish the purported deliberate indifference that forms the basis of this theory.

In sum, the Court finds that Plaintiffs have failed to allege facts sufficient to support their *Monell* claims.  In any event, "a State is not a 'person' against whom a § 1983 claim for money damages might be asserted."  *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617 (2002); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989) (explaining that *Monell* is "limited . . . 'to local government units which are not considered part of the State for Eleventh Amendment purposes.'"); *Monell*, 436 U.S. at 690 n.54.  This is Plaintiffs' third attempt to allege this claim, and Plaintiffs have repeatedly failed to cure the identified deficiencies in the claim by amendment.  *See Eminence Capital*, 316 F.3d at 1051–52.  A further opportunity

United States District Court
Northern District of California

7

1    to amend is not appropriate, so the Court DISMISSES Counts I and II of Plaintiffs' Second

2    Amended Complaint against Parks WITHOUT LEAVE TO AMEND.

3        **B.  Count III: Negligent Hiring/Training**

4        Plaintiffs' Third Cause of Action for "Negligent Hiring, Retention, Training, and

5    Supervision" is brought against Parks only by Plaintiff L.B.[1]  *See* SAC ¶¶ 81–89.  Only Parks

6    moves to dismiss this count.  Parks identifies "three problems with the Cause of Action": (1) that

7    Plaintiffs do not allege that Parks "had a legal duty to train Friends or to [e]nsure that its staff were

8    trained;" (2) that "the SAC alleges that Walizer's conduct was motivated not by lack of training,

9    but by racial 'animus;'" and (3) that "no specific facts establish[] [a] link between Parks'

10   knowledge/belief relative to training and Walizer's call to dispatch."  Parks Mot. at 9.  In response,

11   Plaintiffs say that they "maintain that Parks had a legal duty to train Friends or ensure training for

12   staff" and that they seek leave to amend to the extent that they failed to plead that duty as to Parks

13   in the Second Amended Complaint.  Parks Opp. at 7.  They also say that their allegation is that

14   "Walizer's conduct was due to lack of training *and* racial animus" and that "[t]he SAC is replete

15   with allegations that link Walizer's failures . . . to the lack of training."  *Id.*

16       The Court agrees that Plaintiffs have not pled a legal duty to train on Parks' part.  *See* SAC

17   ¶ 83 ("At all times mentioned herein, FRIENDS, by and through its agents and employees, have

18   and had a mandatory duty of care to properly and adequately hire, train, retain, supervise, and

19   discipline its employees.").  Plaintiffs have also failed to plead that Parks "antecedently had reason

20   to believe that an undue risk of harm would exist because of the employment" of Walizer.  *J.W. v.*

21   *Watchtower Bible & Tract Soc'y of New York, Inc.*, 29 Cal. App. 5th 1142, 1164 (2018); *accord*

22   *Evan F. v. Hughson United Methodist Church*, 8 Cal. App. 4th 828, 836 (1992) ("California

23   follows the rule set forth in the Restatement Second of Agency section 213 . . . .  Comment d to

24   this Restatement section reads in pertinent part: 'The principal may be negligent because he has

25   *reason to know* that the servant or other agent, because of his qualities, is likely to harm others.'").

26   And finally, the Second Amended Complaint does not include sufficient factual allegations as to

27

28   [1] The Court understands that the state law claims are only alleged by L.B. because the other
     Plaintiffs could not satisfy the claims filing requirements of the Government Claims Act.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    any harm suffered by L.B., the only Plaintiff asserting this claim against Parks.  Although the

2    pleading concludes that "PLAINTIFFS suffered damages including severe emotional and mental

3    distress, humility, and injury having a traumatic effect on PLAINTIFF[S'] emotional tranquility,"

4    SAC ¶ 89, Plaintiffs also allege that "Minor L.B. . . . was in a car seat at the time" that Walizer

5    spoke to dispatch, *id.* ¶ 38.  There are no allegations regarding L.B.'s interactions, if any, with

6    Walizer or with the Rangers.

7         In sum, the Court agrees that Plaintiffs have failed to allege "enough facts to state a claim

8    to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Count III of the Second

9    Amended Complaint is DISMISSED WITH LEAVE TO AMEND against Parks.

10         **C.  Count VI: Bane Act**

11         Plaintiffs' Sixth Cause of Action is for violation of California's Tom Bane Civil Rights

12   Act, Cal. Civ. Code § 52.1.  Both Parks and Friends seek to dismiss Count VI.  Parks Mot. at 9–

13   11; Friends Mot. at 5–6.  The Bane Act permits parties to "institute and prosecute in their own

14   name and on their own behalf a civil action for damages" if their "exercise or enjoyment of rights

15   secured by the Constitution or laws of the United States, or of rights secured by the Constitution or

16   laws of [California], has been interfered with, or attempted to be interfered with" as described in

17   subsection (b) of section 52.1, i.e. "by threat, intimidation, or coercion."  Cal. Civ. Code

18   § 52.1(b)–(c).  A Bane Act claim requires: "first, that 'the right at issue [is] clearly delineated and

19   plainly applicable under the circumstances of the case;' and second, that the defendant

20   'commit[ted] the act . . . with the particular purpose of depriving the citizen victim of his

21   enjoyment of the interests protected by that right.'"  *Shine v. Fuston*, No. 20-cv-2036, 2021 WL

22   4460885, at *8 (S.D. Cal. Sept. 29, 2021) (citing *Cornell v. City & Cnty. of S.F.*, 17 Cal. App. 5th

23   766, 803 (2017)).

24         **1.  Parks' Motion to Dismiss Count VI**

25         Only Plaintiff L.B. asserts the Bane Act claim against Parks.  Parks argues that the cause of

26   action should be dismissed because "occupants of a vehicle identified in a call as threatening to

27   shoot Rangers do not have a clearly delineated right to leave before an investigatory stop" and

28   because the "SAC does not allege that the Rangers knew that the vehicle occupants were

1    innocent." Parks Mot. at 10–11. In addition, "[t]he SAC does not specifically allege that guns

2    were pointed at Minor L.B." *Id.* at 11. Plaintiffs respond that they "allege that [Parks] Defendants

3    intentionally prolonged the detention [of Plaintiffs] in order to deprive them of their rights." Parks

4    Opp. at 8.

5         Plaintiffs' allegation that the detention was "intentionally prolonged" is somewhat

6    conclusory; Plaintiffs offer no specific facts indicating that there was an intent to keep Plaintiffs

7    for any longer than necessary to complete the investigation into what had occurred. In addition,

8    there are inconsistent allegations as to what the Rangers understood Walizer to be conveying—the

9    Second Amended Complaint states that Walizer "relayed to dispatch that [Plaintiff Bey] conveyed

10   that if 'a ranger shows up that they're gonna be shot with guns,'" SAC ¶ 31, but it also states that

11   Walizer told dispatch that "[Plaintiff] is worried, she said she was Black, the rangers would shoot

12   her," SAC ¶ 36—so it is unclear whether the Rangers arrived believing there was a threat of gun

13   violence or not. Still, viewing the Second Amended Complaint in the light most favorable to

14   Plaintiffs, the Rangers would have understood that there was not a serious threat to public safety

15   prior to their arrival and should have rapidly determined that there was no need to detain Plaintiffs.

16   Under those circumstances, a detention of "roughly 20 minutes," SAC ¶ 44, may have been

17   unreasonable.

18        That said, it is not clear from the facts alleged that Plaintiff L.B., a minor, was "detained."

19   A passenger can be seized in the course of a traffic stop if the circumstances would lead a

20   reasonable person to believe they were not free to leave. *See Brendlin v. California*, 551 U.S. 249,

21   255–57 (2007). In this case, however, the sparse allegations suggest that L.B. was unable to leave

22   not because the circumstances led her to believe she could not leave, but because she was only five

23   years old and so could not depart on her own. *See* SAC ¶ 38. Therefore, the Court DISMISSES

24   Count VI against Parks. However, the Court gives LEAVE TO AMEND in case Plaintiffs can

25   allege additional facts indicating that L.B. herself was detained.

26        **2. Friends' Motion to Dismiss Count VI**

27        Friends argues that "there are no allegations that any of the Plaintiffs believed that Walizer

28   had the ability to carry out the alleged implied threats of violence." Friends Mot. at 5. Friends

relies on *In re M.S.*, 10 Cal. 4th 698 (1995), in support of the proposition that "speech alone is insufficient to support" liability under the Bane Act, unless the speech "threatens violence against a specific person or group of persons" who reasonably fear that the violence will be committed and that the person making the threat "has the apparent ability to carry out the threat." 10 Cal. 4th at 715. Plaintiffs respond that "Walizer's statements to law enforcement . . . amounted to a threat of imminent violence," because her alleged representations to the dispatcher that Plaintiffs were armed and dangerous had the "natural consequence" of causing officers to "approach Plaintiffs en masse with force." Friends Opp. at 3.

The Court finds that Plaintiffs have stated a Bane Act claim against Friends. "[C]ourts have consistently held that a threat of arrest from law enforcement can be 'coercion' under the Bane Act, even without a threat of violence per se." *Black Lives Matter-Stockton Chapter v. San Joaquin Cnty. Sheriff's Off.*, 398 F. Supp. 3d 660, 680 (E.D. Cal. 2019); *see Cuviello v. City of Stockton*, No. CIV. S-07-1625, 2009 WL 9156144, at *17 (E.D. Cal. Jan. 26, 2009) ("Notwithstanding this, the particular coercive power of law enforcement officers has led courts to impose liability when detention, rather than violence, is threatened."). While the Court recognizes that many such cases involve a situation in which a law enforcement officer directly threatens a person with arrest, the Court finds that a threat to summon law enforcement by an individual who is not him- or herself a member of law enforcement can sometimes be similarly coercive. Viewing the Second Amended Complaint in the light most favorable to Plaintiffs, Walizer represented to the Rangers that Plaintiffs presented an imminent threat to public safety. SAC ¶ 31 (alleging that Walizer "relayed to dispatch that [Plaintiff Bey] conveyed that if 'a ranger shows up that they're gonna be shot with guns'" and that Walizer's responses to follow-up questions suggested that she meant *the Rangers* "would be shot"). Because Walizer allegedly "essentially reported to law enforcement that three Black adults were making threats to shoot law enforcement on their arrival to the scene," Plaintiffs became afraid that the Rangers would arrive armed and with the impression that there was a threat of gun violence. *Id.* ¶ 40. In effect, Walizer threatened Plaintiffs with arrest by the law enforcement officers by summoning the Rangers using her authority as a representative of Friends while misinforming them about Plaintiffs' actions. And

United States District Court
Northern District of California

1  this is further borne out by the allegation that the Rangers arrived with their "guns drawn and

2  pointed" at Plaintiffs. *Id.* ¶ 42.

3        Plaintiffs' allegations regarding Walizer's actions are sufficient to state a Bane Act claim

4  under a second, independent theory, as well. Specifically, in *Aaron v. Target Corp.*, No. 22-cv-

5  01237, 2023 WL 8359855 (C.D. Cal. Dec. 1, 2023), the court concluded that that "a jury could

6  find that the speech by itself—Target employees telling Plaintiffs that they were not allowed to

7  leave and that the police were coming—did threaten violence," where Plaintiffs were Black

8  teenagers and the call to the police occurred "during a time frame where news of police brutality

9  against people of color was prominent in the media." 2023 WL 8359855, at *7 (internal citation

10  omitted); *see Richardson v. City of Antioch*, 722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010) (asking

11  "whether a reasonable person, standing in the shoes of the plaintiff, would have been intimidated

12  by the actions of the defendants and have perceived a threat of violence"). This suit presents a

13  similar situation in which an individual with certain apparent authority (Walizer) made clear that

14  she was summoning law enforcement officers on Plaintiffs, who are Black women. The events

15  underlying this case occurred during a similar time frame to those in the *Aaron* case, so the same

16  concerns about prominent news coverage of police brutality against people of color are equally

17  applicable here, where Plaintiffs similarly allege that they perceived Walizer's remarks to present

18  a risk of violence against them based on their race and the circumstances surrounding the call to

19  the Rangers.

20        Therefore, the Court hereby DENIES Friends' motion to dismiss Plaintiffs' Bane Act

21  claim.

22        **D.  Count VII: Unruh Civil Rights Act**

23  California's Unruh Civil Rights Act states:
   All persons within the jurisdiction of this state are free and equal, and no matter what their

24  sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic
   information, marital status, sexual orientation, citizenship, primary language, or

25  immigration status are entitled to the full and equal accommodations, advantages,
   facilities, privileges, or services in all business establishments of every kind whatsoever.

26

27  Cal. Civ. Code § 51(b). "In general terms, the Unruh Act . . . secures equal access to public

28  accommodations and prohibits discrimination by business establishments." *Sprewell v. Golden*

*State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (quoting *Black v. Dep't of Mental Health*, 83 Cal. App. 4th 739 (2000)).

Only Parks challenges Count VII, and only Plaintiff L.B. asserts Count VII against the Parks Defendants. Parks argues that it is immune to liability based on the Unruh Act under California Government Code section 815, which states that "[e]xcept as otherwise provided by statute[,] . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Parks Mot. at 11; Cal. Gov't Code § 815(a). In addition, Parks argues that it is not a "business establishment" within the meaning of the Unruh Act, and thus is not subject to liability under the statute for that independent reason. Parks Mot. at 12 (citing *Taormina v. California Dep't of Corr.*, 946 F. Supp. 829, 833–34 (S.D. Cal. 1996), *aff'd and remanded sub nom. Taormina v. Corr. Dep't, State of Cal.*, 132 F.3d 40 (9th Cir. 1997)).

Plaintiffs respond that the Court has already rejected efforts to dismiss the Unruh Act claim against Parks during the previous round of motions to dismiss, and that therefore Parks' new arguments for dismissal are moot. Parks Opp. at 9. Plaintiffs further argue that "business establishment" is construed "in the broadest sense reasonably possible" and should apply to a public state park. *Id.* at 9–10 (citing *Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal. 3d 72, 78 (1985), *as modified on denial of reh'g* (Dec. 19, 1985)).

Since "an amended complaint supersedes the original complaint and renders it without legal effect," *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc), "courts within this Circuit have permitted defendants to bring motions to dismiss in response to an amended pleading based on arguments previously made in a prior motion to dismiss and to raise new arguments that were not previously made," *Chao v. Aurora Loan Servs., LLC*, No. C 10-3118, 2013 WL 5487420, at *4 (N.D. Cal. Sept. 30, 2013) (citing *In re Sony Grand WEGA KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010)). The Court will therefore consider Parks' argument regarding the application of Count VII to the Rangers and the Department.

The California Supreme Court has recently discussed in detail the meaning of "business

1    establishment" in the context of the Unruh Act.  *See Brennon B. v. Superior Ct.*, 13 Cal. 5th 662,

2    672–93 (2022), *reh'g denied* (Aug. 31, 2022).  There, the court explained that while "the phrase

3    'business establishments' should be understood 'in the broadest sense reasonably possible,'" that

4    does not change the fact that "the Unruh Civil Rights Act applies only where an entity's 'activities

5    reasonably could be found to constitute a business establishment.'"  *Id.* at 677–78 (quoting *Burks

6    v. Poppy Const. Co.*, 57 Cal. 2d 463, 468 (1962) (en banc), and *Warfield v. Peninsula Golf &

7    Country Club*, 10 Cal. 4th 594, 615 (1995)).  Reviewing its earlier cases on the subject, the court

8    emphasized that the target of an Unruh Act claim "must operate as a business or commercial

9    enterprise when it discriminates," including by performing "the functional equivalent of a

10   commercial enterprise."  *Id.* at 679–80.  Indicators of a business or commercial function include,

11   for example, "regularly conducting business transactions with the public, or receiving financial

12   benefits from regular business transactions."  *Id.* at 681 (internal quotations omitted).  In contrast,

13   certain traditional public functions—like enacting legislation, *id.* at 682 (citing *Harrison v. City of

14   Rancho Mirage*, 243 Cal. App. 4th 162, 175 (2015)), or providing public school education, *id.* at

15   684—take government entity defendants out of the ambit of the Unruh Act.

16        In light of this guidance, the Court concludes that Plaintiffs have failed to state an Unruh

17   Act claim against the Rangers.  In responding to Walizer's call, the Rangers were performing a

18   law enforcement function, which is more akin to the traditional public functions that the California

19   Supreme Court has found to fall outside the bounds of the Unruh Act than it is to a "commercial

20   enterprise."  The Court therefore DISMISSES Count VII against the individual Ranger defendants

21   WITHOUT LEAVE TO AMEND.  However, the Department of Parks and Recreation is

22   differently situated with regard to Unruh Act liability, since it "collects and generate[s] revenue

23   and fees from park users," Parks Opp. at 10, an activity which could be considered akin to regular

24   "business transactions with the public," *see Brennon B.*, 13 Cal. 5th at 681.  Imposition of a per-

25   person or per-car entry fee is, for example, arguably similar to ticketed entry to a movie theater or

26   amusement park that is open to the general public.  The Court concludes that this allegation is

27   sufficient to withstand Parks' motion to dismiss the claim against the Department.  That said, the

28   Court finds this to be a close call and a more developed record may change this conclusion.  The

Court also rejects Parks' immunity argument, since the Court believes Unruh Act liability is governed by California Government Code section 815.6. *See* Cal. Gov't Code § 815.6 ("Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."). Parks' motion to dismiss Count VII against the California Department of Parks and Recreation is DENIED.

### E. Punitive Damages

The Court previously dismissed the request for punitive damages against the Department without leave to amend but gave leave to amend the punitive damages allegations against the Rangers. ECF No 38 at 11–12. In this second motion to dismiss, Parks again moves to strike Plaintiffs' punitive damages allegations against the Rangers. Parks Mot. at 12–13. Since Parks' motion is based on the insufficiency of the allegations, the Court construes the motion as a motion to dismiss. *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1148 (E.D. Cal. 2010) (construing a Rule 12(f) motion challenging the sufficiency of allegations supporting punitive damages as a Rule 12(b)(6) motion).

Under California law, punitive damages are available "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Parks argues that the Second Amended Complaint fails to allege facts supporting any of these aggravating factors. Parks Mot. at 13. Plaintiffs respond that they were specifically granted leave to "include facts related to their prolonged detention at the hand[s] of the Rangers," and that they did include such allegations in the Second Amended Complaint. Parks Opp. at 10.

It is true that Plaintiffs have now alleged that "[w]ithin minutes of arriving on scene the RANGERS learned/knew that PLAINTIFFS did not make the alleged threat and posed no danger," yet they continued to detain Plaintiffs for approximately twenty more minutes. SAC ¶ 44. However, as the preceding analysis reveals, Plaintiffs have not included sufficient facts in their Second Amended Complaint to ensure that any claims against the individual Ranger

defendants survive Parks' second motion to dismiss.  The Court has dismissed the Bane Act claim against the Parks Defendants, including the Rangers, based on Plaintiffs' failure to include sufficient facts to support the inference that L.B. was detained.  *Supra* section III.C.1.  The Court has also dismissed the Unruh Act claim against the Rangers.  *Supra* section III.D.  Therefore, since there are no remaining claims against them, the Court hereby DISMISSES the request for punitive damages against the Rangers.  This dismissal is WITH LEAVE TO AMEND, since the Court gave leave to amend the Bane Act claim against the Rangers.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Counts I and II of the Second Amended Complaint are DISMISSED WITHOUT LEAVE TO AMEND against Parks.

2.  Count III of the Second Amended Complaint is DISMISSED WITH LEAVE TO AMEND against Parks.

3.  Count VI of the Second Amended Complaint is DISMISSED WITH LEAVE TO AMEND against Parks.  Friends' motion to dismiss Count VI is DENIED.

4.  Count VII of the Second Amended Complaint is DISMISSED WITHOUT LEAVE TO AMEND against the individual Ranger defendants.  Parks' motion to dismiss Count VII against the California Department of Parks and Recreation is DENIED.

5.  The request for punitive damages against the individual Ranger defendants is DISMISSED WITH LEAVE TO AMEND.

6.  Plaintiffs SHALL file a third amended complaint addressing the deficiencies identified at the hearing and in this Order no later than 30 days from the date of this Order.

**IT IS SO ORDERED.**

Dated:  January 17, 2025

_____
BETH LABSON FREEMAN
United States District Judge